850 A.2d 596

IN THE MATTER OF GREEN BROOK
FLOOD CONTROL PROJECT.

Superior Court of New Jersey
Appellate Division

Argued May 18, 2004—Decided June 22, 2004.

Before Judges SKILLMAN, WELLS and C.S. FISHER.

*Gregory Eisenstark* argued the cause for appellant *PSE & G.*

*Sidney D. Weiss* argued the cause for appellant *Verizon New Jersey, Inc.*

*Tirza S. Wahrman,* Deputy Attorney General, argued the cause for respondent *New Jersey Board of Public Utilities* (*Peter C. Harvey,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Wahrman,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether the cost of relocation of public utility facilities necessitated by a flood control project constructed under the State Flood Control Act, *N.J.S.A.* 58:16A–1 to –17, must be paid by the State or the public utility. We conclude that the directive of *N.J.S.A.* 58:16A–8, that the total cost of any relocation of utility facilities required under the Act "shall be considered as a part of the cost of the work," reflects a legislative intent that the State pay the cost of such relocations.

By enactment of § 401 of the Water Resources Act of 1986 (Pub.L. No. 99–662), Congress authorized the construction of the Green Brook Flood Control Project within a sixty-five square mile watershed that encompasses parts of Union, Somerset and Middlesex counties. The project envisions the creation of 66,540 feet of levees, 11,220 feet of floodwalls, 10 bridge replacements, a bridge removal, interior drainage facilities and non-structural measures, and 8 closure structures, to provide a 150–year level of flood protection. The Water Resources Act authorizes the expenditure of $237,053,000 as the federal share of this joint federal-state project.

The State Flood Control Act (the Act), which was first enacted in 1948, *L.* 1948, *c.* 351, provides the requisite authorization for the State to participate in such a federal-state flood control project. Under this legislation, the Commissioner of the Department of Environmental Protection (DEP) is authorized "to carry out the State's participation in a Federal program of flood control." *N.J.S.A.* 58:16A–5. The Commissioner's powers include determining whether a flood control project requires the removal, relocation and reconstruction of public utility facilities. *N.J.S.A.* 58:16A–8. However, an order by the Commissioner for the relocation of public utility facilities must be approved by the Board of Public Utilities (BPU) before it becomes effective. *Ibid.*

In 1999, the DEP entered into a project cooperation agreement with the United States Army Corps of Engineers for construction of the Green Brook Flood Control Project. The agreement re-

quires the State to contribute at least 25% of the total project structural costs.

To carry out this agreement, the Commissioner issued a determination order on May 24, 2001, which required various public utilities, including appellants, to remove, relocate and/or reconstruct specified facilities located within the project area. Around the same time, appellants entered into agreements with the DEP under which they reserved their rights to seek recovery of the costs associated with the relocation of their facilities from the State. The DEP took the position in both agreements that appellants were responsible for those costs.

As required by the Act, the Commissioner's order requiring the removal, relocation and reconstruction of public utility facilities in the area of the Green Brook Flood Control Project was submitted to the BPU for approval. While the matter was under review by the BPU, the Attorney General rendered a legal opinion that the costs of the relocation of such facilities must be borne by the public utilities and not by the State. In accordance with this opinion, by order dated January 17, 2002, the BPU approved the Commissioner's relocation order, and required the public utilities to bear the costs, subject to recoupment in future ratemaking proceedings.

Appellants filed separate appeals from the part of the order that requires them to bear the cost of the removal, relocation and reconstruction of their facilities necessitated by the flood control project, which we consolidated.

In their joint brief, appellants argued not only that the BPU, based on the Attorney General's advice, had incorrectly construed the Act to impose responsibility upon them for the costs of relocation of their facilities, but also that the BPU had acted beyond its jurisdiction in deciding this legal issue and had violated the Administrative Procedure Act, *N.J.S.A.* 52:14B-1 to -25, and requirements of due process by deciding the issue without notice to affected parties. However, appellants agreed at oral argument that this court has jurisdiction to decide whether the Act requires

public utilities or the State to pay the cost of the relocation of public utility facilities necessitated by a flood control project, and that we should decide this legal issue now rather than remanding the case to the BPU or DEP.

The common law rule is that a public utility must bear the cost of any relocation of its facilities necessitated by the construction of a public improvement project. *Pine Belt Chevrolet, Inc. v. Jersey Cent. Power & Light Co.*, 132 *N.J.* 564, 572–73, 626 *A.*2d 434 (1993); *Port of New York Auth. v. Hackensack Water Co.*, 41 *N.J.* 90, 97–98, 195 *A.*2d 1 (1963). However, the legislation authorizing a public project may alter this common law rule and place the financial responsibility for any required relocations of public utility facilities upon the government agency that is constructing the project. *Id.* at 101, 108, 195 *A.*2d 1. Therefore, the question is whether the Act reflects a legislative intent to place the financial responsibility for any relocation of public utility facilities necessitated by a flood control project upon the State rather than the utilities.

The governing section of the Act states in relevant part:

Whenever the commissioner shall determine that the construction of a flood control project requires the removal, relocation and reconstruction of any plants, works, holders, pumping stations, pipes, mains, tunnels, bridges, tracks, generating or switching stations, substations, transformers, conduits, cables, wires, towers, poles, or other structures, equipment, apparatus, or appurtenances (herein called "facilities") of any public utility, ... the public utility owning or operating such facilities shall remove, relocate and reconstruct the same, upon the order of the commissioner, and *the total cost and expense of the removal, relocation and reconstruction of such facilities,* including the cost of installing such facilities in a new location or new locations, and the cost of any lands or any rights or interests in lands, or any other rights, required to accomplish such removal, relocation and reconstruction, *shall be considered as a part of the cost of the work.*

[*N.J.S.A.* 58:16A–8 (emphasis added).]

This section has not been interpreted in any reported opinion. Moreover, neither appellants nor the DEP have offered any evidence concerning how the financial responsibility for the relocation of utility facilities was assigned in connection with other flood control projects constructed under the Act. Consequently, this appeal involves solely the interpretation of the language of

*N.J.S.A.* 58:16A–8, considered in light of certain other sections of the original Act.

The only reference to the term "work" in the Act other than in *N.J.S.A.* 58:16A–8 is contained in *N.J.S.A.* 58:16A–5, which states in part:

Work, except work which shall be done under and pursuant to section 7 of this act, may be carried out by contract or by department forces or by a combination of these two methods. However, if the commissioner [of the DEP] deems it to be in the interest of the public, he may agree with a municipal corporation affected by such work, to have its contractor or its forces and equipment perform such work, upon such terms as the commissioner may deem advantageous to the State.

The legislative requirement that any contract for flood control work must be negotiated on terms "deem[ed] advantageous to the State" seems to envision that the State will be responsible for the cost of any work performed under *N.J.S.A.* 58:16A–5. We perceive no reason to assign any different significance to the term "work" as used in *N.J.S.A.* 58:16A–8. Thus, the evident intent of the directive that the cost of any utility relocations "shall be considered as a part of the cost of the work" is that the State would have the same responsibility for the costs of utility relocations required under *N.J.S.A.* 58:16A–8 as for flood control work performed under *N.J.S.A.* 58:16A–5.

This interpretation of *N.J.S.A.* 58:16A–8 is supported by the federal flood control legislation that the Act was designed to implement and the appropriations provision of the original Act. The stated purpose of the Act was to enable the State "to participate in a Federal program of flood control." *L.* 1948, *c.* 351.[1] To that end, the Act authorizes the State Treasurer "to receive from the Federal Government any moneys which the Federal Government shall offer to the State of New Jersey for reimbursement for expenditures or otherwise in connection with any Federal flood control project in the State of New Jersey," *N.J.S.A.* 58:16A–2, and directs the Commissioner of Environmen-

---

[1] The Act was amended in 1979 to authorize the State to undertake flood control projects without federal financial participation. *L.* 1979, *c.* 358. The 1979 amendments have no impact upon the issue presented by this appeal.

tal Protection to "carry out the State's participation in a Federal program of flood control, . . . and to do and perform all necessary acts in connection therewith to consummate the intent and purpose running with the approval by the Federal Government of flood control projects in the State of New Jersey." *N.J.S.A.* 58:16A–5.

Four years before enactment of this legislation, Congress passed the Flood Control Act of 1944, Pub.L. No. 78–534, 58 Stat. 887 (codified as 33 *U.S.C.* § 701–09 (2000)), which amended and supplemented prior federal laws authorizing joint federal-state flood control projects. This legislation authorized a preliminary examination and survey for a flood control project to be constructed on "Absecon Island, New Jersey, with a view to the protection of Atlantic City, Ventnor, Margate City, Longport and other areas on the New Jersey coast, that have been affected from floods due to tide and wind." *Id.* at 903, 195 *A.*2d 1.

In 1946, Congress further amended the laws governing federal-state flood control projects by enactment of the Flood Control Act of 1946, which provides:

> *Whenever the Chief of [the Army Corps of] Engineers shall find that any highway, railway or utility has been or is being damaged or destroyed by reason of the operation of any dam or reservoir project* under the control of the War Department, *he may utilize any funds available for the construction, maintenance or operation of the project involved for the repair, relocation, restoration, or protection of such* highway, railway or *utility.*

> [Flood Control Act of 1946, Pub.L. No. 79–526, 60 Stat. 641, 643 (1946); 33 *U.S.C.A.* § 701q (emphasis added).]

Thus, the legislation authorizing federal funding of flood control projects, which apparently was the moving force for enactment of the Act, specifically authorizes federal funding of utility relocations under some circumstances.

Most illuminating in the interpretation of *N.J.S.A.* 58:16A–8 is the fact that the original State Flood Control Act specifically authorized State funding of utility relocations. Section three of that Act appropriated $275,000 for the State's share of the costs of

participation in federal flood control projects, including the costs of relocations of public utility facilities:

> The sum of two hundred seventy-five thousand dollars ($275,000.00), or so much thereof as may be needed, if and when appropriated, shall be used for payment by the State of the costs of the State's participation in Federal flood control projects. . . . The money when appropriated shall be available for the cost of relocation and reconstruction of State highways, including structures; for channel improvements; for check dams; for quarries; gravel pits, spoil banks and borrow pits; for access roads; for camp sites; for relocation of buildings, structures and facilities; *for relocation of the properties, structures, service lines and connections incident thereto of public service utilities, both publicly and privately owned;* for rights-of-way and for other related purposes contemplated by and incidental to said flood control projects.
>
> [*L.* 1948, *c.* 351, § 3 (emphasis added).]

Although the Legislature repealed section three when it amended the Act in 1979, we assign no significance to this repeal. The Assembly Committee statement indicated that the 1979 amendments repealed "certain archaic and redundant" provisions. *Assembly Energy and Natural Resource Committee, Statement to S. No. 1492* (1979). Section three had become archaic because it simply authorized a start-up appropriation to fund implementation of the Act in 1948. Subsequent appropriations for flood control projects have been included in the Annual Appropriations Acts, *see, e.g., L.* 1979, *c.* 196, p. 845–46; *L.* 2003, *c.* 122, 2003–2004 *Appropriations Handbook* B–56, and thus there was no need to reenact section three in 1979. Therefore, this provision of the original Act reinforces the conclusion, evident from the plain language of *N.J.S.A.* 58:16A–8, that the Legislature that enacted this legislation intended the State to pay the cost of any utility relocations necessitated by flood control projects constructed under the Act.

The BPU argues that because *N.J.S.A.* 58:16A–6 states that the total costs for the relocation of streets and other public facilities required by a flood control project "shall be paid by the State" and *N.J.S.A.* 58:16A–9(2) states that the cost of any condemnation award "shall be paid out of State treasury," the Legislature's failure to use comparable language in *N.J.S.A.* 58:16A–8 indicates that it did not intend to require the State to pay the cost

of utility relocations. However, the BPU's argument does not attribute any operative effect whatsoever to the legislative directive that "the total cost and expense [of relocation of utility facilities] shall be considered as a part of the cost of the work." *N.J.S.A.* 58:16A–8. A court "should strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant." *G.S. v. Dept. of Human Servs.*, 157 *N.J.* 161, 172, 723 *A.*2d 612 (1999). Therefore, the only reasonable interpretation of *N.J.S.A.* 58:16A–8, especially considered in light of section three of the original Act, is that the Legislature intended the State to be responsible for the cost of the relocation of public utility facilities necessitated by a flood control project.

Accordingly, we reverse the part of the January 17, 2002 BPU order that requires appellants to bear the cost of the relocations of their facilities necessitated by the Green Brook Flood Control Project.